UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOHNNY R. MOWDY,** | Case No. 6:16-cv-00842-YY |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**YOU, Magistrate Judge:**

Plaintiff Johnny R. Mowdy ("Mowdy") seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner")[1] finding him disabled only after he reached age 50 and, therefore, denying portions of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 USC §§ 401-33, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 USC §§ 1381-83f.

This court has jurisdiction pursuant to 42 USC § 405(g) and 42 USC § 1383(c)(3). Both Mowdy and the Commissioner have consented to allow a Magistrate Judge to enter final orders and judgment in this case. ECF #14; FRCP 73; 28 USC § 636(c). For the reasons set forth

---

[1] The official title of the head of the Social Security Administration, and the properly named defendant in this case, is the "Commissioner of Social Security." 42 USC § 902(a)(1).

below, this court concludes that the Commissioner erred at step five by finding that Mowdy can perform work existing in substantial numbers in the economy. The record supports no conclusion but that, due to nonexertional restrictions the Commissioner failed to account for, Mowdy is incapable of performing the only job identified by the Commissioner as within his exertional capabilities. Accordingly, to the extent it found Mowdy not disabled prior to reaching age 50, the Commissioner's April 25, 2016, decision is REVERSED, and this case is REMANDED for an award of benefits.

## ADJUDICATIVE HISTORY
## AND BACKGROUND FACTS

In late January 1996, at age 31, Mowdy was partially ejected and sustained serious injuries in a motor-vehicle accident after the car in which he was riding as a passenger hit a pole. Tr. 252, 303. His injuries included an orbital basilar skull fracture and bilateral cerebral contusions, resulting in "serious neuropsychological deficits." Tr. 252, 303. After nearly two months of trauma treatment, Mowdy was transferred into psychiatric care at Oregon Health & Science University ("OHSU") due to psychomotor agitation and aggressive behavior. Tr. 245. At that time, he required help with activities of daily living and was placed in constant restraints and locked seclusion. Tr. 245, 495. On March 27, 1996, Mowdy was transferred and court-committed to Oregon State Hospital ("OSH"). Tr. 303-05.

After eight months at OSH, Mowdy was discharged in early December 1996 to live with his mother. His diagnoses at discharge included a history of dementia and personality changes secondary to head injury, status post bilateral intraparenchymal hemorrhages, and orbital basilar skull fractures. Tr. 301. Follow-up examinations with OHSU neurologists throughout 1997 showed some improvement; this resulted in the neurologists lowering the dosage and eliminating some of the medications from Mowdy's treatment regimen. Tr. 235-43.

Mowdy received DIB from January 27, 1996, through July 26, 2000, because he met a listed impairment based on his head injury and residual symptoms. Tr. 146, 766, 908-09. In late 1998, Mowdy faced criminal charges stemming from alleged incidents predating his head injuries. This resulted in evaluations of whether he was capable of assisting in his own defense. Tr. 493-503 (December 1998), 718-22 (March 1999). Eventually, Mowdy entered a no contest plea and was sentenced to 115 months in prison. Tr. 39, 505. As a result of his incarceration, Mowdy's benefits were terminated for "technical reasons." Tr. 909. Mowdy earned a GED during his incarceration. Tr. 142. He was released from prison in June 2006 and moved in with his sister. Tr. 31, 185.

Mowdy filed claims for DIB and SSI on July 24, 2006 ("2006 Applications"). Tr. 79-80, 144-45, 762. Following denials of those claims at the initial, reconsideration, and Administrative Law Judge ("ALJ") levels, Mowdy filed a second set of applications for DIB and SSI on February 24, 2009 ("2009 Applications"). Tr. 9-21 (ALJ decision dated February 3, 2009), 762, 1209-13. Over the next three years, Mowdy's applications ran on parallel tracks. On January 20, 2010, the Appeals Council denied Mowdy's request for review of the ALJ's denial of his 2006 Applications. Tr. 1-3. Meanwhile, his 2009 Applications were denied at the initial, reconsideration, and ALJ level. Tr. 856-61 (ALJ decision dated December 21, 2010). Mowdy requested review of the decision on his 2009 Applications by the Appeals Council. He also appealed the decision on the 2006 Applications to this court, resulting in an order remanding the case for further proceedings. Tr. 867-70, *Mowdy v. Comm'r of Soc. Sec.*, Civil No. 6:10-cv-6063-HO, Order (February 16, 2011).

After some wrangling (Tr. 1076-78, 1238), the Appeals Council consolidated Mowdy's 2006 and 2009 Applications. Tr. 763. Thereafter, on April 11, 2013, an additional

3 – OPINION & ORDER

administrative hearing took place before ALJ John Michaelsen. Tr. 789-833. On October 9, 2014, the ALJ issued a decision ("October 2014 Decision") finding no disability from August 1, 2000, (the date of the prior termination) forward. Tr. 762-78.

Mowdy requested review by the Appeals Council, which accepted jurisdiction and issued a partially-favorable decision on April 25, 2016 ("April 2016 Decision"). Tr. 732-36. The Appeals Council found that Mowdy was not disabled prior to his 50th birthday, and therefore adopted the ALJ's October 2014 Decision denying his request for DIB from August 1, 2000 through his date last insured of December 31, 2003. Tr. 733. However, the Appeals Council found Mowdy disabled from the time he reached age 50 based upon a change in age category, *i.e.*, "closely approaching advanced age." Tr. 735. Mowdy, however, maintains he was disabled prior to attaining age 50. The April 2016 Decision is the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 416.1481, 422.210.

## **DISABILITY ANALYSIS**

Disability is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The Commissioner engages in a five-step sequential inquiry to determine whether a claimant meets that definition. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)); 20 CFR §§ 404.1520, 416.920.

At step one, the Commissioner considers the claimant's work activity. If the claimant is performing substantial gainful activity, he will not be found disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the Commissioner considers the severity of the alleged physical or mental impairment. If the impairment or combination of impairments are not deemed severe or do not meet the 12-month durational requirement, the claimant will not be found disabled. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).

At step three, the Commissioner again considers the severity of the alleged impairment. If the severe impairment or combination of impairments meets or equals an impairment listed in 20 CFR § 404-p, App. 1 (Listing of Impairments), the claimant will be found disabled. 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d).

If the claimant is not found disabled at step three, the Commissioner then assesses medical and other relevant evidence to determine the claimant's residual functional capacity ("RFC") to perform work-related activities, despite the limitations imposed by his severe impairment or combination of impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner considers the RFC and the claimant's past relevant work. If the claimant can perform past-relevant work, he will not be found disabled. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five the Commissioner assesses the claimant's RFC, age, education, and work experience to determine whether the claimant can transition to other work in the national economy. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g). If so, the claimant is not disabled; if not, he is disabled.

The claimant bears the initial burden of establishing disability at steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, at step five, the burden of proof shifts to the Commissioner to establish that the claimant can perform

other work in the national economy considering the claimant's age, education, work experience, and RFC. *Id*. (citation omitted); 20 CFR § 404.1520(g) & 20 CFR § 416.920(g). Work exists in the national economy when there a "significant number of jobs" the claimant can do with their physical, mental, and vocational abilities. 20 CFR §§ 404.1566(b), 416.966(b).

## **THE COMMISSIONER'S FINDINGS**

At step one, the Commissioner determined that Mowdy "has not engaged in substantial gainful activity since August 1, 2000." Tr. 734, 766.

At step two, the Commissioner determined that Mowdy's severe impairments are: "mild cognitive disorder with history of traumatic brain injury, chronic low back pain secondary to multilevel lumbar degenerative disc disease with associated left lower extremity weakness, and tremors in his bilateral hands." *Id.*

At step three, the Commissioner determined that Mowdy's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment. Tr. 734, 770.

The Commissioner next determined Mowdy's RFC as:

> "sedentary work; except occasional fingering; avoid concentrated exposure to workplace hazards; limited to simple, repetitive, routine instructions and tasks; occasional contact with the public, coworkers, or supervisors; and slow-paced environment without frequent interruptions."

Tr. 735, 771.

The Commissioner further determined that Mowdy's RFC allowed him to "perform a reduced range of the sedentary exertional level." Tr. 735.

Mowdy worked intermittently at seasonal and agricultural jobs prior to his injuries in 1996. Tr. 1239-49. Nevertheless, at step four, the Commissioner determined that Mowdy had no past relevant work for purposes of his disability benefits applications. Tr. 735, 776.

At step five, based on Mowdy's age, education, work experience, RFC, and vocational expert ("VE") testimony, the Commissioner found Mowdy capable of performing the single job identified by the VE as within Mowdy's exertional capacity, namely that of "Guard, Security," ("Security Guard") listed in the *Dictionary of Occupational Titles* ("DOT") at 372.667-034. Tr. 733, 777. However, only those Security Guard jobs with an exertional level of sedentary were appropriate, resulting in a 90% reduction in the job base. Tr. 777. The Appeals Council adopted the findings of the ALJ, but found Mowdy disabled as of age 50, due to a change in his age category. Tr. 735.

## STANDARD OF REVIEW

After the Appeals Council issues its final decision, federal courts have "the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g); *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). Where the Commissioner's decision is based on proper legal standards and is supported by substantial evidence, it will be affirmed. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007).

Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Garrison*, 759 F.3d at 1009 (internal quotation marks and citation omitted). It means relevant evidence a "reasonable person might accept as adequate to support a conclusion." *Id.* (citation omitted). The reviewing court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098). The reviewing court will uphold the Commissioner's decision when reasonable inferences from the record support it, even when the record is open to multiple interpretations. *Tommasetti v. Astrue*, 533

F.3d 1035, 1038 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("Where the evidence can reasonably support either affirming or reversing the decision, we may not substitute our judgment for that of the Commissioner.").

## **DISCUSSION**

### I. Issue and Analysis

#### A. Step Five

Mowdy asserts multiple errors by the Commissioner, at various steps of the five-step disability determination process. However, many of these assertions need not be considered because the Commissioner failed to meet her burden at step five by identifying work Mowdy can perform with his longstanding and well-documented cognitive impairments. Properly crediting evidence from two examining doctors from 2000 and 2007 necessarily would result in Mowdy being considered incapable of other work, even before age 50.

Despite a voluminous administrative record spanning more than a decade, at the final administrative hearing, this case narrowed to whether Mowdy could perform the single job identified by the VE as being within Mowdy's exertional capabilities. As relevant here, the hypothetical posed to the VE at the August 6, 2014 administrative hearing, the RFC formulated by the ALJ, and the RFC later adopted by the Appeals Council each include limitations that Mowdy is limited to understanding, remembering and carrying out "simple, repetitive, routine instructions and tasks" and must "work in an environment that is slow-paced and without frequent interruptions throughout the day." Tr. 771, 1643-44. The issue is whether those restrictions fully and fairly encompass the limitations supported by substantial evidence in the record and, if not, whether properly crediting any such limitations would eliminate the single job

identified by the VE, and later by the ALJ and the Appeals Council, as the only job within Mowdy's exertional limitations.

### B. Mowdy's Cognitive Impairments

The record contains ample and uncontradicted evidence of Mowdy's cognitive impairments dating to well before Mowdy's date last insured. A wealth of mental health records document Mowdy's treatment and restrictions, starting with Mowdy's transfer into OSH in March 1996, and culminating with various assessments taken at the behest of Disability Determination Services ("DDS") following the filing of Mowdy's DIB and SSI applications. Two assessments, in particular, reveal cognitive limitations inconsistent with employment as a Security Guard.

On March 9, 2000, Paul S. Stoltzfus, Psy.D., examined Mowdy and performed a neuropsychological assessment. Tr. 504-08. That assessment was prior to the termination of Mowdy's benefits for "technical reasons," consisted of a battery of objective tests, and revealed a cognitive disorder NOS. Objective testing indicated a full-scale IQ of 83, memory in the "low average" range, executive functioning in the "low average" and "below average" ranges, and verbal comprehension in the 1st percentile. Tr. 506-07.

Years later, after Mowdy again applied for benefits, Douglas A. Smyth, Ph.D., performed a psychodiagnostic and intellectual evaluation of Mowdy at the request of DDS on February 3, 2007. Tr. 384-92. As did Dr. Stoltzfus, Dr. Smyth found notable cognitive limitations, including a full-scale IQ of 80 and verbal comprehension in the 1st percentile. Tr. 387, 390. Following that assessment, non-examining doctors performed records reviews and completed Psychiatric Review Technique forms, including Paul Rethinger, Ph.D., on February 13, 2007 (Tr. 393-417)

and Dorothy Anderson, Ph.D., on March 26, 2009 (Tr. 1433-50). Finally, Kordell Kennemer, Psy.D, completed a "Mental Summary" on May 12, 2009 (Tr. 1459).

Neither the ALJ's October 2014 decision nor the Appeals Council's April 2016 Decision, give any basis for rejecting the findings of Drs. Stoltzfus and Smyth, both of whom examined Mowdy and performed objective testing, with remarkably similar outcomes seven years apart. Indeed, the October 2014 Decision purports to give "great weight to the non-treating medical source opinions in the record because they are generally consistent with the overall evidence" (Tr. 776) and incorporates into the RFC both the limitation endorsed by the two physicians who completed Psychiatric Review Technique forms limiting Mowdy to understanding, remembering, and carrying out simple, routine tasks and instructions (Tr. 417, 1449), as well as the additional limitation endorsed by Dr. Rethinger of working "in an environment that is slow-paced and without frequent interruption throughout the day" (Tr. 417, 771). Nevertheless, as discussed below, the DOT reveals that Security Guard jobs require reasoning skills and the performance of duties well beyond the comprehension abilities identified by Drs. Stoltzfus and Smyth. The RFC does not fully encapsulate Mowdy's limitations, and the Commissioner's April 2016 Decision failed to address this issue, despite it being raised multiple times by Mowdy. No substantial evidence in the record supports the conclusion that Mowdy is capable of performing the only job identified by the VE as within his exertional limitations, rendering the Commissioner's decision denying benefits prior to Mowdy's 50th birthday in error.

**B. Security Guard Jobs Identified by the VE**

In assessing jobs appropriate to a claimant's abilities, the Commissioner may take administrative notice of job data from governmental publications, including the DOT. 20 CFR §§ 404.1566(d)(1), 404.1566(e). The DOT is a "primary source" for the SSA, *Terry v. Sullivan*,

903 F.2d 1273, 1276 (9th Cir. 1990), but testimony from a VE can support a disability decision when a claimant's limitations are complex. 20 CFR § 404.1566(e). To determine occupations appropriate to the claimant's RFC, the Commissioner poses hypotheticals to the VE, considering the limitations supported by the record. *Tackett,* 180 F.3d. at 1011. If the VE offers testimony that conflicts with the DOT, the Commissioner has an affirmative duty to resolve the conflict before relying on the VE's testimony to reach a disability determination. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

At the August 6, 2014 hearing, the VE flatly denied the existence of any job options for Mowdy other than Security Guard, DOT 372.667-034, a job encompassing light exertional work. Tr. 1644-45. With Mowdy's restriction to sedentary (rather than light) exertional work, the VE determined that the available jobs would be reduced by 90%, leaving a total of 58,000 jobs nationwide and 500 in Oregon. *Id*. The VE was adamant that those sedentary Security Guard positions were the only jobs (out of 137 sedentary unskilled occupations) that Mowdy could hope to perform based on his RFC, which included a limitation to only occasional bilateral fingering. Tr. 1645.

### C. Duties of Security Guard

The DOT "is considered to be the best source for how a job is generally performed" and "creates a rebuttable presumption as to the job classification." *Bray v. Comm'r of Soc. Sec. Admin*. 554 F.3d 1219, 1230 (9th Cir. 2009) (internal quotation marks and citations omitted). The ALJ may rely on VE testimony that contradicts the DOT, but only to the extent that the record "'contains persuasive evidence to support the deviation.'" *Tommasetti*, 533 F.3d at 1042 (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). Moreover, the failure to

903 F.2d 1273, 1276 (9th Cir. 1990), but testimony from a VE can support a disability decision when a claimant's limitations are complex. 20 CFR § 404.1566(e). To determine occupations appropriate to the claimant's RFC, the Commissioner poses hypotheticals to the VE, considering the limitations supported by the record. *Tackett,* 180 F.3d. at 1011. If the VE offers testimony that conflicts with the DOT, the Commissioner has an affirmative duty to resolve the conflict before relying on the VE's testimony to reach a disability determination. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

At the August 6, 2014 hearing, the VE flatly denied the existence of any job options for Mowdy other than Security Guard, DOT 372.667-034, a job encompassing light exertional work. Tr. 1644-45. With Mowdy's restriction to sedentary (rather than light) exertional work, the VE determined that the available jobs would be reduced by 90%, leaving a total of 58,000 jobs nationwide and 500 in Oregon. *Id*. The VE was adamant that those sedentary Security Guard positions were the only jobs (out of 137 sedentary unskilled occupations) that Mowdy could hope to perform based on his RFC, which included a limitation to only occasional bilateral fingering. Tr. 1645.

### C. Duties of Security Guard

The DOT "is considered to be the best source for how a job is generally performed" and "creates a rebuttable presumption as to the job classification." *Bray v. Comm'r of Soc. Sec. Admin*. 554 F.3d 1219, 1230 (9th Cir. 2009) (internal quotation marks and citations omitted). The ALJ may rely on VE testimony that contradicts the DOT, but only to the extent that the record "'contains persuasive evidence to support the deviation.'" *Tommasetti*, 533 F.3d at 1042 (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). Moreover, the failure to

include in the RFC all of a claimant's significant limitations renders the VE's testimony of "no evidentiary value." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (citation omitted).

The DOT lists Security Guard positions as requiring general educational development Level 3 Reasoning, Level 1 Mathematics, and Level 2 Language abilities. Tr. 822. Mowdy contends that the objective testing of Drs. Stoltzfus and Smyth, dating back to 2000, reveals cognitive limitations plainly inconsistent with the core responsibilities of a Security Guard. When properly credited, he asserts that the single job identified by the VE is eliminated. This court agrees.

The focus of Mowdy's argument is the position of Security Guard requires Level 3 Reasoning skills whereas his objectively tested comprehension abilities rank in the 1st percentile. The Commissioner contends the Security Guard job is appropriate and faults Mowdy with blindly comparing language in the RFC to that in the DOT. Defendant's Brief (ECF #18), pp. 15-18[2] (citing *Meissl v. Barnhart*, 403 F.Supp.2d 981 (C.D. Cal. 2005)). However, that line of reasoning misses the thrust of Mowdy's argument and all but ignores a case nearly on all fours.

In a case closely paralleling this case, the Ninth Circuit recognized a conflict between a limitation to simple, repetitive tasks, and the demands of Level 3 Reasoning. *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015). Moreover, the Ninth Circuit expressly rejected the notion that completion of a particular level of education presumptively renders a claimant capable of Level 3 Reasoning: "[T]here is no rigid correlation between reasoning levels and the amount of education that a claimant has completed. . . . [T]he DOT's reasoning levels clearly correspond to the claimant's *ability* because they assess whether a person can 'apply' increasingly difficult

---

[2] The only other case cited by the Commissioner is an unpublished opinion issued prior to January 1, 2007, and, therefore not appropriate for citation to or by this court. *See* Ninth Circuit Rule 36-3(c); Defendant's Brief (ECF #18), p. 18.

principles of rational thought and 'deal' with increasingly complicated problems." *Id*. at 847 (quoting DOT App. C, 1991 WL 688702) (emphasis in original).

In *Zavalin,* the claimant was found not disabled at step five because the VE identified two occupations the claimant could perform considering his RFC: cashier and surveillance system monitor. *Id.* Both occupations required Level 3 Reasoning, *i.e.*, the ability to "apply commonsense instructions furnished in written, oral, or diagrammatic form." *Id.* at 846–47. The claimant's RFC was limited to "simple, routine, or repetitive work." *Id.* Instead of noting the conflict, the Commissioner relied on the VE's testimony and the claimant's educational successes to make the initial determination that the claimant could fulfill the reasoning requirements of the occupations, and concluded the claimant was not disabled.

The Ninth Circuit held that both occupations required tasks beyond the plaintiff's ability. *Id.* at 847. Although the plaintiff had some success in math and earned a modified diploma, his educational successes did not encompass both "informal and formal reasoning requirements" as listed in the DOT's description for the occupations. *Id.* (citing DOT App. C, 1991 WL 688702). The DOT requirements reflect a person's ability to apply "increasingly difficult principles of rational thought," something the plaintiff could not do because he was limited to "simple, repetitive, and routine" work. *Id.* The failure caused a gap in the record, making it impossible to review whether the ALJ's determination was supported by substantial evidence. *Id.* In this case, Mowdy's cognitive abilities are far removed from the reasoning level required of the only job the VE identified and the VE provided no helpful analysis when specifically questioned about this at the hearing.

Level 3 Reasoning, apart from its specification of the types of instructions that the claimant must be capable of understanding and carrying out, also requires the claimant to "Deal

with problems involving several concrete variables in or from standardized situations." Tr. 1650. Consistent with that requirement, representative duties for the positon of Security Guard include taking steps to prevent "fire, theft, vandalism, and illegal entry," by doing such things as patrolling buildings and grounds, warning violators of infractions, watching for and reporting irregularities, observing departing personnel to identify company property and prevent its theft, distinguishing between those authorized and not authorized to enter company premises, and recording data for supervisory staff on such things as property damage, unusual occurrences, and malfunctioning of machinery or equipment. DOT 372.667-034. These duties necessarily mandate the ability to comprehend such things as the boundaries of company real property and improvement ownership, company policies about access and other on-site rules governing conduct, and the inventory of tangible company property and its approved uses and levels of access. They also mandate the ability to gather a wide variety of factual data, evaluate that data against other known information about company ownership, rules, policies, or safety protocols, formulate an appropriate response, communicate the information to others who may be charged with responding, document the information, and successfully interface with law enforcement, fire officials, or other enforcement officials.

Consistent with the job duties described in the DOT, the VE acknowledged that a fair reading of the Security Guard job required the ability to "see situations, evaluate situations, make that assessment of what response is required, and then communicate to those in charge of making that response." Tr. 1651. Explaining further, the VE testified that a Security Guard job requires the employee to "respond if anything untoward happened." Tr. 1647. In addition, the job requires the ability to "formulate a response to evaluate the situation and make work-related decisions to determine what to do next and how to go about it." *Id*. Summarizing, the VE noted

that "if an untoward event happened," the Security Guard would "have to contact [his or her] supervisor, and probably the police, have to write at least a brief report [including] some simple recitation of the events that transpired that were untoward." Tr. 1648. In short, Security Guard positions require the ability to evaluate situations, assess the response required, and communicate to those in charge of making the response. Tr. 1651.

When asked about the complexity of reasoning required, the VE read the Level 3 Reasoning requirement and then stated "I've read that for 30 years . . . . and I still don't know exactly what that means." Tr. 1650. He also noted the DOT classification is "not necessarily indicative" of the reasoning level to do many different occupations and described placing clients with "very little education" in those positions. *Id*. However, nothing in the VE's testimony overcomes the presumption accorded the description in the DOT. At best, the VE's testimony acknowledges the lack of correlation between educational level and ability to perform Security Guard jobs. However, the hypothetical posed to the VE and the RFC on which it is based do not include any restriction accounting for Mowdy's 1st percentile comprehension scores, and the VE professed an inability to comment on whether the Security Guard job was consistent with comprehension capacity at the 1st percentile. Tr. 1647. Nevertheless, at the conclusion of the hearing, the Commissioner asked if the VE's testimony was consistent with the DOT. Tr. 1655. The VE stated, "I think everything else is pretty much consistent with the DOT, or I've indicated why—if I disagreed with the DOT, I've already indicated why I had otherwise." *Id*. The April 2016 Decision simply adopts the October 2014 Decision, which in turn relied on the VE's conclusory statement that his testimony was consistent with the DOT. Tr. 777.

However, as explained in detail in Mowdy's opening brief, the only conclusion supported by the record, which includes uncontradicted and repeated psychological evaluations, is that the

Security Guard job is eliminated. Plaintiff's Brief (ECF #17), pp. 23-28. As described above, the Level 3 Reasoning abilities reflected in the duties of a Security Guard are inconsistent with the comprehension testing by both Dr. Smyth and Dr. Stoltzfus. Thus, the April 2016 Decision, to the extent it incorporates the step five finding of the ALJ's October 2014 Decision, is in error.

## II. Remedy

Mowdy asserts he is entitled to benefits on the existing record due to the elimination of the Security Guard position. This court credits evidence as true when the ALJ fails to provide legally sufficient reasons for rejecting the evidence, no outstanding issues must be resolved prior to a determination of disability, and it is clear the ALJ would be required to find the claimant disabled if the evidence were credited. *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004). This is just such a case.

The record reveals no basis for discounting the assessments performed by Dr. Stoltzfus in 2000 and Dr. Smyth in 2007. As explained above, when properly credited, the objective and unrefuted cognitive assessments by Drs. Stoltzfus and Smyth eliminate Security Guard jobs as an employment option for Mowdy. No persuasive evidence supports deviation from the job requirements identified in the DOT and no substantial evidence supports the conclusion that Mowdy can perform the only job the VE identified as within Mowdy's exertional capabilities. In short, "the record afford[s] no reason to believe that [Mowdy] is not, in fact, disabled" and was so before age 50. *Garrison*, 759 F.3d at 1021 (footnote omitted). Accordingly, this court concludes that reversal of the portions of the Commissioner's April 2016 Decision finding Mowdy not disabled prior to attaining age 50, and remand for an award of benefits, is the appropriate course of action.

///

**ORDER**

Those portions of the Commissioner's April 2016 Decision (Tr. 732-36) finding Mowdy not entitled to benefits before attaining age 50 are REVERSED, and this case is REMANDED for an award of benefits not inconsistent with this opinion.

DATED this 3rd day of October, 2017.

                                                  /s/ Youlee Yim You

                                                  Youlee Yim You
                                                  United States Magistrate Judge